IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RAY N. THOMPSON, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-1232 |
| ) | |
| CORRECT CARE SOLUTIONS and ) | Judge Trauger |
| JOHN DOE #4, ) | Magistrate Judge Brown |
| ) | |
|    Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Ray N. Thompson filed his *pro se* complaint in this action under 42 U.S.C. § 1983, seeking relief against defendant Correct Care Solutions, LLC ("CCS") and five other defendants, including Sheriff Daron Hall and John Doe 1, 2, 3 and 4. Judge Trauger dismissed the claims against Sheriff Hall and the first three John Doe defendants on initial review, and permitted the claims to proceed against CCS and John Doe #4. Per order entered August 9, 2012, the plaintiff was given until September 28, 2012, to identify and request service of process on John Doe #4. To date, John Doe #4 has not been identified or served.

Presently pending is CCS's motion for summary judgment (ECF No. 33). The motion is supported by a memorandum of law (ECF No. 35), statement of undisputed material facts (ECF No.36), and the affidavit of Jennifer Williams (ECF No. 34). In response to the defendant's motion, the plaintiff submitted his response in opposition thereto (ECF No. 45). CCS thereafter filed a reply brief (ECF No. 49).

Also pending is the plaintiff's most recent motion to amend his complaint (ECF No. 59).

**I.   THE MOTION FOR SUMMARY JUDGMENT**

    **A.   Factual Allegations in Complaint**

In his complaint, which was sworn under penalty of perjury (ECF No. 1, at 11), the plaintiff alleged generally that he was assaulted by another inmate while he was detained at the Davidson County Criminal Justice Center ("CJC"), which resulted in his having six teeth knocked out. The plaintiff was escorted to the infirmary at the CJC, where a female nurse identified in the complaint as John Doe #4 told the plaintiff that he could not be treated at the infirmary. She made no attempt to treat the plaintiff. The plaintiff waited in a holding cell for three hours, bleeding profusely and holding his teeth in his hand, before being transported to

the Emergency Room ("ER") at Nashville General Hospital. At the ER, he was told that his teeth could not be replaced because no effort had been made in the intervening time to preserve them. In addition, three more teeth were loose and had to be pulled because there were no other teeth around them to support them. The complaint alleged that John Doe #4 exhibited deliberate indifference to the plaintiff's serious medical needs when she failed to treat the plaintiff or make any effort to preserve his teeth, and that her actions were taken as a result of CCS custom and practice of failing to provide prompt and necessary dental care to CJC inmates. More specifically, the complaint alleged that CCS "has a policy of restricting if not outright denying medical treatment by an outside doctor or hospital when such treatment is expensive." (ECF No. 1, at ¶ 24.) The plaintiff offers no evidentiary support for that statement.

In support of its motion for summary judgment, CCS submitted the Affidavit of Jennifer Williams, CCS's Vice President for Litigation & Clinical Focus. Williams states, based upon her personal knowledge, that CCS contracts with the Metropolitan Government of Nashville & Davidson County ("Metro") to provide medical care to inmates at the CJC. CCS is not responsible for providing any other services, such as transportation to or from the CJC.

According to Williams, CCS has adopted policies pertaining to the medical and dental care provided to inmates. Attached to Williams' affidavit is a copy of CCS's Policy for Oral Care and a copy of CCS's Policy for Access to Care. According to the Policy for Oral Care, which went into effect October 1, 2008:

> Dental services are provided under the direction and supervision of a dentist licensed in the State of Tennessee. Care will be timely and include expedited access for urgent or painful conditions. A system will be followed that establishes priorities for care when, in the dentist's judgment, the inmate's health would otherwise be adversely affected. A dentist performs an oral examination within 12 months of admission, supported by diagnostic x-rays, if indicated.

(ECF No. 34-1, at 1.) This Policy further specifies that "inmates having severe pain" and "[e]vulsed teeth" are to be considered "Priority One" emergency situations. (*Id.*)

The Policy for Access to Care was likewise adopted in October 2008. This policy states that "[t]he Health Authority will ensure that inmates have unimpeded access to medical, dental and mental health care." (ECF No. 34-2, at 1.) It further states that "[i]nmates will be seen in a timely manner by a health care professional and receive health care services for serious medical, dental and mental health conditions." (*Id.*) The policy provides for inmates to be provided information during intake regarding access to health services.

**B.     Standard of Review**

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). After sufficient time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a "light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

"[T]he burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgment as a matter of law," even if the non-moving party fails to respond. Fed. R. Civ. P. 56(c).

Applying these standards to the case at bar, the Magistrate Judge notes that the plaintiff failed to satisfy his procedural burden pursuant to Local Rule 56.01(c), which requires a specific response to each fact set forth in the defendant's statement of undisputed material facts that accompanied its motion to dismiss. According to Local Rule 56.01(g), such failure to respond "shall indicate that the asserted facts are not disputed for purposes of summary judgment."

### C. Legal Analysis

#### 1. *The Court May Not Consider New Facts Asserted in the Plaintiff's Response.*

In the context of considering whether there are material factual disputes that preclude summary judgment in a particular case, the court may only consider facts that are properly supported by citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A) (providing that a party asserting that a fact is genuinely disputed "must support the assertion by . . . citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

In his response in opposition to the motion for summary judgment, the plaintiff makes numerous factual allegations that are not supported by the factual record. That is, they are not included in the plaintiff's sworn complaint, and they are not presented in an affidavit, declaration or other sworn document that has been made a part of the record. For instance, the plaintiff states in his response document that there were "several" nurses at the infirmary when the plaintiff arrived and who witnessed the plaintiff's condition, but they "totally ignored plaintiff." (ECF No. 45, at 2–3.) This is a new allegation that appears nowhere else in the record. The plaintiff also alleges that the follow-up care he received from CCS's employees after he returned from the hospital was inadequate, but the allegations he raises in support of this claim are likewise new. The plaintiff makes arguments based upon allegations that the defendant failed adequately to train its employees, but he did not raise a failure-to-train claim in his complaint, and there are no facts in the record relating to a purported failure to train. The plaintiff further alleges that there have been numerous suits filed against CCS, which should have put it on notice of a pattern of repeated problems, which could indicate deliberate indifference, but again, the plaintiff has not presented proof of the existence of suits that should have put CCS on notice of a pattern or practice of denying necessary care.

Accordingly, none of these new, unsupported allegations may be taken into consideration in the course of the court's ruling on the motion for summary judgment.

#### 2. *Defendant CCS Is Entitled to Summary Judgment in its Favor.*

To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws

of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  CCS does not dispute that it may be deemed to function as a state actor, insofar as it contracts with Metro to provide medical care to jail inmates, a state function.  CCS contends instead that the plaintiff lacks admissible evidence to show that CCS violated the plaintiff's constitutional rights.  In that regard, CCS argues that it cannot be held vicariously liable under a *respondeat superior* theory for the wrongful acts of its employees, and that the plaintiff cannot show that any policy or custom adopted by CCS was responsible for the plaintiff's alleged constitutional injury.

First, to the extent the plaintiff seeks to recover damages from CCS based on the actions of its employee, John Doe #4, the defendant is correct that liability under § 1983 may not be premised upon *respondeat superior* or vicarious liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Thus, even assuming that the plaintiff has alleged facts from which it may be inferred that John Doe #4 was deliberately indifferent to the plaintiff's serious medical needs, in violation of the plaintiff's constitutional rights,[1] CCS cannot be held vicariously liable under § 1983 for the acts of John Doe #4.  Instead, for the court to find CCS liable for a constitutional violation under § 1983, the plaintiff must show that "deliberate action" by CCS "caused a deprivation of federal rights."  *Starcher v. CMS*, 7 F App'x 459, 465 (6th Cir. 2001) (citations omitted).  That is, under *Monell*, liability against an entity can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice.  *Monell*, 436 U.S. at 694.  "At the very least, there must be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

The defendant has presented evidence in the form of an affidavit stating what CCS's policies are regarding the provision of emergency dental care.  The plaintiff has not presented any evidence to refute the existence of these policies, or to show that they were not appropriately implemented or promulgated.  His factual allegations show, at best, that John Doe #4 may not have followed CCS's policies, but, again, John Doe #4's failure to comply with CCS's established policies does not give rise to liability on the part of CCS in the absence of some showing that the failure may be attributed to CCS.  The plaintiff has simply failed to present any admissible evidence that would support such a conclusion.

---

[1] The allegations in the complaint are clearly sufficient to allege that John Doe #4 was negligent, but negligence does not give rise to liability under 42 U.S.C. § 1983.

Specifically regarding the plaintiff's allegation in his verified complaint that CCS "has a policy of restricting if not outright denying medical treatment by an outside doctor or hospital when such treatment is expensive" (Complaint ¶ 24), the undersigned notes that such a conclusory assertion, while adequate to permit the plaintiff's complaint to survive an initial review, will not defeat summary judgment in the absence of supporting facts. *Cf. Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (finding that "conclusory statements" unsupported by specific facts will not permit a party to survive summary judgment); *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999) (holding that affidavits that contained no "specific facts" but "are merely conclusory, restating the requirements of the law . . . cannot create a genuine issue of material fact sufficient to defeat summary judgment"). The plaintiff has not provided any factual support for his contention that CCS has a policy of denying care.

The plaintiff has the burden of proving that he suffered a deprivation of his constitutional rights that was caused by some custom or policy adopted by CCS. Because CCS has presented facts showing that it does not have in place any policy that gave rise to the plaintiff's injuries, and the plaintiff has not succeeded in presenting evidence that would create a material factual dispute as to that question, CCS's motion for summary judgment should be granted, and the claims against CCS dismissed. *See Celotex Corp.*, 477 U.S. at 322 (holding that Rule 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### III.     FAILURE TO SERVE JOHN DOE #4

Rule 4(m) of the Federal Rules of Civil Procedure states that the court must either dismiss without prejudice an action as to any defendant who is not served within 120 days after the complaint is filed, or direct that service be effected within a specific time.

The complaint in this action was filed on December 27, 2011, and the initial order permitting the claims against CCS and John Doe #4 to proceed was entered on January 17, 2012. On August 9, 2012, substantially more than 120 days after the complaint was filed, the court entered an order giving the plaintiff until September 28, 2012 to effect service on John Doe #4. In that order, the plaintiff was provided notice that failure to identify John Doe #4 and to request service upon that defendant within the specified time frame would result in a

recommendation that the case against John Doe #4 be dismissed for failure to prosecute and failure to obtain service of process under Rule 4(m). To date, service has still not been effected.

The Magistrate Judge will therefore recommend that the case against John Doe #4 be dismissed without prejudice.

**IV.     MOTION TO AMEND**

Also pending is the plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 59), in which the plaintiff seeks to amend his complaint to add a claim against CCS for breach of contract. He asserts that he is a third-party beneficiary of the contract between CCS and Metro, pursuant to which CCS agreed to provide medical services to Metro's jail inmates.

Breach of contract is a cause of action grounded in state law. Under 28 U.S.C. § 1367(a), the district courts has "supplemental jurisdiction" over state law claims that are so closely related to the claims over which the court has original jurisdiction that the "they form part of the same case or controversy." The proposed claim is closely enough related to the original § 1983 claim against CCS that it would form part of the same case or controversy. Notwithstanding, the ordinary practice of this court is to dismiss without prejudice any supplemental state-law claims once the court has dismissed all claims over which it had original jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3). In light of the recommendation that the claims against CCA and John Doe #4 be dismissed, any supplemental state-law claim would be subject to dismissal without prejudice under § 1367(c)(3). Amendment to add such claims would therefore be futile.

**V.      RECOMMENDATION**

In light of the foregoing, the undersigned recommends that

(1) defendant CCS's motion for summary judgment (ECF No. 33) be granted;

(2) the claims against John Doe #4 be dismissed without prejudice for failure to effect service and failure to prosecute;

(3) the motion to amend (ECF No. 59) be denied; and

(4) this action be dismissed in its entirety.

The plaintiff has fourteen days from receipt of the Report and Recommendation in which to file any written objections to it with the district court. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within

fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Millon*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

                                         /S/ Joe B. Brown
                                         JOE B. BROWN
                                         United States Magistrate Judge